## IN THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WINEACCESS, INC. | : | |
| | : | **CIVIL ACTION** |
| Plaintiff, | : | |
| | : | **No.** |
| v. | : | |
| | : | **(Electronically Filed)** |
| CORAVIN, INC. | : | |
| | : | |
| Defendant. | : | |

## COMPLAINT

Plaintiff, WineAccess, Inc. ("WineAccess"), by and through its undersigned counsel, Duane Morris LLP, hereby files this Complaint against Defendant, Coravin, Inc. ("Coravin" or "Defendant"), seeking injunctive and other relief, and in support thereof avers as follows:

## INTRODUCTION

1.     This is an action for injunctive relief and money damages stemming from Coravin's trademark infringement and related claims of unfair competition and false designation of origin arising under the trademark and unfair competition laws of the United States, and for unfair competition, trademark infringement, and unfair and deceptive trade practices arising under the statutory and common laws of Pennsylvania.

## PARTIES

2.     Plaintiff WineAccess is a Pennsylvania Corporation that maintains its principal place of business at 120 E. Lancaster Avenue, Suite 205, Ardmore, Pennsylvania 19003.

3.     On information and belief, Defendant Coravin is a corporation of Delaware with a principal place of business at 154 Middlesex Turnpike, Burlington, Massachusetts 01803.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction  over the claims for relief arising under the Lanham Act, 15 U.S.C. § 1121.  The Court has jurisdiction over the unfair competition claims herein under the provisions of 28 U.S.C. § 1338(b) in that said claims are joined with a substantial and related claim under the Trademark Laws of the United States, 15 U.S.C. §§ 1051 *et seq*.

5.      This Court has supplemental subject matter jurisdiction over the pendent state law claims under 28 U.S.C. § 1367(a) because these claims are so related to WineAccess' claims under federal law that they form part of the same case or controversy and derive from a common nucleus of operative facts.

6.      This Court has personal jurisdiction over Coravin because its commission of acts that give rise to this dispute have an effect within this Commonwealth.

7.      Venue is proper in this Court under 28 U.S.C. § 1391(b)  because a substantial part of the events giving rise to WineAccess' claims occurred in this District and a substantial part of the property, intellectual or otherwise, that is subject to WineAccess' claims is situated within this District.

## FACTUAL BACKGROUND

### WINEACCESS AND ITS WINEACCESS® BRAND

8.      WineAccess is a leading provider of consumer information about wine products and wine vendors, and retail services for wine.

9.      WineAccess is the owner of the trade name WineAccess and the trademarks WINEACCESS®, WINEACCESS.COM®, and WINEACCESS DIRECT® ("the WINEACCESS® Marks").  The WINEACCESS® Marks are federally registered and substantially all of the registrations have achieved incontestable status.  True and accurate copies

of the trademark registration certificates, status and title histories, are attached hereto as **Exhibit 1.**

10.    The WINEACCESS® Marks cover a variety of retail and information services focused on wine.  The WINEACCESS® Marks were first used in connection with these services in 1996, and use has been continuous and exclusive since 1996.

11.    WineAccess offers its WINEACCESS® services from the website located at www.wineaccess.com and has done so since the URL was first registered in January, 1996.

12.    As a result of WineAccess' longstanding and continuous use of the WINEACCESS® Marks to identify its services, WineAccess' customers have come to identify WineAccess as the exclusive source of those services.

13.    WineAccess has maintained and continues to maintain the highest standards of quality of its services marketed, offered, and rendered under the WINEACCESS® Marks

14.    Over the course of nearly twenty years, WineAccess has established itself as a preeminent wine buying network, and a leading authority for all things wine.

15.    WineAccess provides users with opportunities to purchase and information about more than 48,000 different wines from around the world.  Additionally, WineAccess offers thousands of tasting notes to enhance consumers' wine knowledge and experience.

16.     WineAccess has a retailer network of over one hundred stores across the United States to maintain availability to consumers. WineAccess regularly offers its members exclusive opportunities to purchase limited production wines.

17.    In addition to its website, WineAccess co-authored *The WineAccess Buyer's Guide:  The World's Best Wines and Where to Find Them* (Sterling, 2006).  The book features

expert recommendations, regional information, and ratings for multiple vintages, all for the top wine producers in the world.

18.    WineAccess actively promotes its WINEACCESS® services and related goods through social media, including Twitter, where it presently has over 4,200 followers, and Facebook, where it presently has more than 3,500 followers.   WineAccess has invested significant time and resources into developing its reputation and the good will of the WINEACCESS® brand.

### CORAVIN AND ITS UNAUTHORIZED USE OF THE WINEACCESS® MARK

19.    On information and belief, Coravin is a privately held company located in Burlington, Massachusetts.

20.    Coravin markets and sells one or more products for wine enthusiasts, namely, products that allow wine drinkers to sample portions of a bottle of wine without uncorking it.

21.    In or about early 2014, Coravin introduced to the market a product that uses pressurized argon gas to extract limited amounts of wine from a bottle without uncorking the bottle.  It calls this system the "Wine Access" system, or "Wine Access" technology, or "The Coravin 1000 Wine Access System," as shown below.  True and correct samples of Coravin's marketing for this product are attached hereto as **Exhibit 2.**



22.     WineAccess first became aware of Coravin's use of "Wine Access" as a name for this product in late February 2014, and on March 31, 2014, it sent a letter to Coravin to notify Coravin of its federal and incontestable rights in the WINEACCESS® mark, and to request that Coravin discontinue any and all use of "Wine Access" as a name or brand for its products.  A true and correct copy of the March 31, 2014 letter is attached hereto as **Exhibit 3.**

23.     Coravin, through its counsel, responded to the March 31 letter on April 14, 2014, denying any wrongdoing.   Specifically, Coravin alleged its use of "Wine Access" was descriptive and fair, and that third party uses of "wine access" to describe their products or services precluded a likelihood of consumer confusion. Coravin's letter closed with a claim that Coravin "does not consider 'wine access technology' as its brand. It does not lead with the phrase and it is not attempting to build goodwill in it."    A true and correct copy of Coravin's April 14, 2014 letter is attached hereto as **Exhibit 4.**

24.     The purported third party examples of use of "Wine Access" raised in Coravin's letter showed use by WineAccess itself, others located outside of the U.S., and still others displaying descriptive and fair use of the words "wine" and "access."  Thus, WineAccess sent a follow up letter on April 28, 2014, repeating its request that Coravin discontinue its trademark

use of "Wine Access." A true and correct copy of WineAccess' April 28 letter is attached hereto as **Exhibit 5.**

25.     Coravin offered no response to WineAccess' April 28 letter. And, in or about early June 2014, WineAccess learned that Coravin was halting sales of its "Wine Access System" because wine bottles hooked up to the system were exploding and injuring consumers. The dangerous flaw in the system was widely reported in the press. True and correct copies of select press articles referencing the explosions are attached hereto as **Exhibit 6.**

26.     As of June 25, 2014, the Coravin Wine Access System was officially recalled. Coravin also offered consumers a prophylactic solution by providing them with a free neoprene sleeve to encase bottles in case they exploded. The recall and purported solution were also widely reported in the press. True and correct copies of select press articles referencing the recall are attached hereto as **Exhibit 7.**

27.     Despite the recall, Coravin continues to market and sell its "Wine Access System," and indeed uses the term "Wine Access" or "WineAccess" in its social media posts, notwithstanding its counsel's statement in its April 14, 2014 letter that it "does not lead with the phrase [WineAccess] and it is not attempting to build goodwill in it." . A true and accurate screen image from Twitter, dated December 9, 2014, is shown below and attached hereto as **Exhibit 8.**



28.     Coravin continues to use, without WineAccess' authorization, the name "Wine Access" for its (faulty and dangerous) wine extraction product.

**COUNT I**

**FEDERAL TRADEMARK INFRINGEMENT**

29.     WineAccess incorporates the preceding paragraphs as though set forth herein.

30.     Coravin has used in commerce names and trademarks that are identical and/or confusingly similar to WineAccess' federally registered WINEACCESS® Marks, in connection with the sale, offering for sale, distribution and/or advertising of goods and such uses are likely to cause confusion or to deceive.

31.     The aforesaid acts of Coravin constitute trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

32.     The aforesaid acts of Coravin have been intentional, willful, and in bad faith.

33.     WineAccess has been and is likely to be damaged in the future by Coravin's infringing and unlawful acts.

34.     The acts of Coravin complained of herein have caused and, unless enjoined by the Court, are likely to continue to cause WineAccess to suffer irreparable harm.

35.     WineAccess is entitled to relief pursuant to 15 U.S.C. §§ 1116, 1117 and 1125.

## COUNT II

### FEDERAL UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN

36.     WineAccess incorporates the preceding paragraphs as though set forth herein.

37.     Coravin has used in commerce trademarks that are identical and/or confusingly similar to the WINEACCESS® Marks in connection with the sale, offering for sale, distribution and/or advertising of goods and such uses are likely to cause confusion or to cause mistake or to deceive.

38.     The aforesaid acts of Coravin are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of WineAccess or WineAccess' services or commercial activities with goods, services, or commercial activities that are not WineAccess', or as to the origin, sponsorship, or approval by WineAccess of Coravin's goods, services, or commercial activities.

39.     The aforesaid acts of Coravin constitute false designation of origin and false and misleading descriptions and representations in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

40.     The aforesaid acts of Coravin have been intentional, willful, and in bad faith.

41.     WineAccess has been and is likely to be damaged by Coravin's conduct and unlawful acts.

42.     The acts of Coravin complained of herein have caused and, unless enjoined by this Court, are likely to cause WineAccess to suffer irreparable harm.

43.     WineAccess is entitled to relief pursuant to 15 U.S.C. §§ 1116, 1117, and 1125.

## COUNT III

### PENNSYLVANIA COMMON LAW UNFAIR COMPETITION

44.     WineAccess incorporates the preceding paragraphs as though set forth herein.

45.     Coravin has used in commerce trademarks that are identical and/or confusingly similar to the WINEACCESS® Marks in connection with the sale, offering for sale, distribution and/or advertising of goods and such uses are likely to cause confusion or to cause mistake or to deceive.

46.     Coravin's acts constitute unfair competition and an infringement of WineAccess' common law rights in the WINEACCESS® Marks.

47.     Coravin has infringed the WINEACCESS® Marks as alleged herein with the intent to deceive the public into believing that the goods sold or services provided by Coravin are made by, approved by, sponsored by and/or affiliated with WineAccess.

48.     Coravin's acts were committed, and are being committed, with the intent to pass off and palm off Coravin's goods and services as the goods and services of WineAccess, and with the intent to deceive and defraud the public.

49.     The aforesaid acts of Coravin constitute unfair competition in violation of the common law.

50.     The aforesaid acts of Coravin have been intentional, willful, and in bad faith.

51.     WineAccess has been and is likely to be damaged by Coravin's unlawful acts.

52.     WineAccess is entitled to any and all relief authorized by law.

53.     The acts of Coravin complained of herein have caused and, unless enjoined by this Court, are likely to cause WineAccess to suffer irreparable harm.

## COUNT IV

### Unfair and Deceptive Trade Practices in Violation of 73 P.S. § 201-1 et seq.

54.     WineAccess incorporates the preceding paragraphs as though set forth herein.

55.     Coravin's conduct constitutes unfair and deceptive trade practices in violation of 73 P.S. § 201-1 et seq., which prohibits unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce.

56.     Coravin's business practices alleged above are unfair or deceptive acts or practices in or affecting commerce which proximately caused or will cause actual injury to WineAccess, or are otherwise unscrupulous, or substantially injurious to consumers.

57.     Upon information and belief, Coravin has willfully engaged in the act or practice, and there was an unwarranted refusal by Coravin to fully resolve the matter which constitutes the basis of this civil action.

58.     Pursuant to 73 P.S. § 201-1 et seq., WineAccess is entitled to enjoin these practices and to recover its damages, trebled, or punitive damages. WineAccess is also entitled to recover its reasonable attorney fees and costs of suit.

59.     Without injunctive relief, WineAccess has no means by which to control Coravin's unfair and deceptive use of the WINEACCESS® Marks. WineAccess is therefore entitled to injunctive relief prohibiting Coravin from continuing such acts of unfair competition.

**PRAYER FOR RELIEF**

WHEREFORE, WineAccess prays for a judgment in its favor and against Coravin and requests the following relief:

1.      That Coravin, its officers, agents, servants, employees, and attorneys, and all parties in active concert or participation with any of them, be permanently enjoined from:

   (a)   Engaging in any further acts of trademark infringement and unfair competition of WineAccess' WINEACCESS® Marks described herein above, in violation of both federal and state trademark and unfair competition laws and under the common law;

   (b)   Using in any way a name or mark that is identical or confusingly similar to any WineAccess trademark, including the WINEACCESS® Marks;

   (c)   Registering or using any domain containing, comprising, or referring to any WineAccess trademark, including the WINEACCESS® Marks; and

   (d)   Any other conduct which causes or is likely to cause confusion, mistake, deception, or misunderstanding as to the source, affiliation, connection or association of the WINEACCESS® Marks or other WineAccess trademarks.

2.      That an accounting and judgment be rendered against Coravin awarding:

   (a)   WineAccess punitive damages in a sum to be determined at trial;

   (b)   Restitution and disgorgement of all ill-gotten gains unjustly obtained and retained by Coravin through the acts complained of here;

   (c)   All profits received from the sale of goods furnished in connection with or advertised in any manner by the use of the WINEACCESS® Marks or designations confusingly similar thereto, either directly or indirectly or by implications or representations of affiliation or relationship with WineAccess;

   (d)   Damages to be proven at trial or statutory damages including enhanced statutory damages for willful trademark infringement, unfair

competition and false designation of the origin of goods, and that such damages, where appropriate, be trebled;

(e)     WineAccess their attorneys' fees and costs; and

(f)     WineAccess such other and further relief as the Court deems just and proper.

3.     That Coravin be ordered to surrender for destruction any and all print or electronic emblems, signs, invoices, labels, packaging, prints, articles, and promotional and advertising materials of any kind in its possession or under its control bearing the WINEACCESS® Marks or designations confusingly similar thereto;

5.     That WineAccess be awarded such other and further relief as this Court may deem just and equitable under the circumstances.

Respectfully submitted,

David J. Wolfsohn
djwolfsohn@duanemorris.com
Christiane Campbell
ccampbell@duanemorris.com
**Duane Morris LLP**
30 S. 17th St.
Philadelphia, PA 19103
Telephone: 215.979.1866
Facsimile: 215.979.1020

December 22, 2014                    *Attorneys for Plaintiff WineAccess, Inc.*